Frank L. BARKER, Jr., Barker–Sargent Corporation, Robert MacNeil, and Upper Valley Regional Landfill Corporation, Plaintiffs,

v.

Barbara RIPLEY, Secretary, Vermont Agency of Natural Resources and Vermont Agency of Natural Resources, Defendants.

No. 2:96–cv–106.

United States District Court, D. Vermont.

April 9, 1996.

---

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, for plaintiffs.

John W. Kessler, Assistant Atty. Gen., Vermont Attorney General's Office, Montpelier, VT, Barbara Ripley, Vermont Agency of Natural Resources, Office of Assistant Attorney General, Waterbury, VT, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a declaratory judgment action, in which the Plaintiffs have requested a preliminary injunction prohibiting the Vermont Agency of Natural Resources ("VANR") from proceeding with its administrative enforcement action against them for failure to perform closure and post-closure operations at their landfill. The Defendants have moved to dismiss the complaint on the grounds that this Court is required to abstain from exercising jurisdiction over the complaint under the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); that the Eleventh Amendment bars the Plaintiffs' claims; and for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court abstains from exercising jurisdiction in this case, and grants Defendants' motion to dismiss.

*Background*

The pleadings and their attachments in this case reveal the following facts. The Upper Valley Regional Landfill, an unlined commercial landfill in Post Mills, Vermont, is

the subject of several state proceedings. Leachate from the landfill has contaminated and continues to contaminate groundwater near the landfill, and threatens the water quality of the Ompompanoosuc River. Although the landfill ceased operations in 1989, it has yet to perform closure and post-closure activities in connection with the landfill, such as "capping" it with a layer of material impervious to water to reduce the formation of leachate.

In 1993 the State of Vermont brought an enforcement action against the Plaintiffs in Superior Court in Washington County, seeking damages and injunctive relief for violations of 10 V.S.A. § 1259(a), 1410(c) and 6616, the Vermont Solid Waste Management Rules, the Vermont Groundwater Protection Rules, and the common law of public nuisance. The Plaintiffs have counter-claimed against the state for damages and injunctive relief.

The Plaintiffs also brought a third party complaint in the case, naming the state among other entities as responsible for disposing of household hazardous materials in the landfill. The Washington Superior Court case remains pending.

On July 11, 1995, the VANR issued an administrative order to the Plaintiffs, pursuant to 10 V.S.A. § 6610a(c), requiring them to submit closure and post-closure plans to the agency, to begin and complete closure of the facility, and to undertake water quality monitoring, among other actions. The Plaintiffs requested a hearing on the order, and entered their appearance for the purpose of contesting subject matter jurisdiction and to request the recusal of the hearing officer on the grounds of conflict of interest.

On October 30, 1995, the hearing officer issued his decision denying the Plaintiffs' motion to disqualify him for conflict of interest. On November 28, 1995 the hearing officer ruled that the Washington Superior Court did not have exclusive jurisdiction over matters involving the landfill, and that the agency had authority under the statute to proceed with an administrative hearing while the state concurrently sought relief in the superi-

or court. The Plaintiffs' appeal of these orders to the Vermont Supreme Court was dismissed for lack of a final appealable order. *Secretary, Vermont Agency of Natural Resources v. Upper Valley Regional Landfill,* No. 95–592, —— Vt. ——, —— A.2d —— (Vt. Feb. 15, 1996).

In the Washington County case, the Plaintiffs requested the Superior Court to issue a temporary restraining order enjoining the agency from proceeding with the administrative hearing and causing the administrative hearing officer to be recused. The Superior Court denied these requests on August 31 and October 24, 1995. The Plaintiffs' request for preliminary injunction on these issues remains pending in the Superior Court. The parties subsequently stipulated to a partial stay in the Washington County case of certain of the State's requests for relief which were covered by the administrative enforcement order of July 11, 1995.

The Plaintiffs then filed a complaint for declaratory judgment and request for preliminary injunction in this Court on March 21, 1996, asserting that the hearing officer, who is also a policy advisor to the Secretary of the VANR, has an impermissible conflict of interest because VANR is a defendant in other pending related proceedings, and the outcome of the administrative hearing may affect VANR's potential liability in those proceedings. The Plaintiffs claim that the hearing officer's refusal to recuse himself is a violation of the due process clause of the Fourteenth Amendment.

The Defendants have moved this court to abstain and to dismiss the action. Specifically, they claim that *Younger v. Harris* [1] abstention applies; that the Eleventh Amendment bars the Plaintiffs' suit in federal court against the State of Vermont and against Secretary Ripley in her official capacity; and that the complaint fails to state a claim for which relief can be granted, because there is no private right of action based directly on the Fourteenth Amendment.

### Discussion

In determining whether abstention is proper, this Court "begins with the principle

---

**1.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

that federal courts have a 'virtually unflagging obligation' to exercise jurisdiction over all cases properly before them." *Youell v. Exxon Corp.,* 48 F.3d 105, 108 (2d Cir.1995), *vacated sub nom. Exxon Corp. v. Youell,* —— U.S. ——, 116 S.Ct. 43, 133 L.Ed.2d 9 *on remand* 74 F.3d 373 (1996) (citation omitted).

The Supreme Court has, however, recognized four extraordinary and narrow exceptions to the duty to exercise jurisdiction. *See Youell,* 48 F.3d at 108–09. One, a federal court may abstain to avoid deciding a constitutional issue where the case may be disposed of by a state court on state law grounds. *See Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Two, abstention is proper in cases involving complex questions of state law which implicate important state policy issues. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Three, a federal court must abstain in cases filed to enjoin state proceedings absent a showing of bad faith, harassment, or other unusual circumstance calling for equitable relief. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Four, a federal court may abstain "for reasons of wise judicial administration" when parallel state court proceedings are pending. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Wilton v. Seven Falls Co.,* —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

This case involves the *Younger* abstention doctrine. The *Younger* decision arose out of an attempt to obtain a federal injunction against a state court criminal proceeding. The Supreme Court held that relief was barred because of the fundamental policy against federal intervention with state criminal proceedings, and the absence of the factors necessary under equitable principles to justify federal intervention. *Younger,* 401 U.S. at 45, 54, 91 S.Ct. at 751, 755.

*Younger* did not address civil proceedings. Over the years, however, *Younger* has been applied to civil proceedings which are akin to criminal prosecutions. *See e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (federal court will not step in when state sues in state court to enjoin operation of theater showing obscene films); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (federal court will not interfere with state court contempt process); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (federal court will not hear action challenging state's right to sue to recover fraudulently obtained welfare payments; *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (no federal action allowed when state's child custody proceeding is pending).

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), was the first application of the *Younger* doctrine to a state administrative proceeding. The case involved attorney disciplinary proceedings initiated by a state ethics committee. To determine whether abstention was required, the Supreme Court asked three questions: (1) was there an ongoing state judicial proceeding; (2) did the proceedings implicate important state interests; and (3) was there an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.,* at 432, 102 S.Ct. at 2521. The Supreme Court noted that the state Supreme Court had delegated its state constitutional authority to enforce professional discipline among attorneys to local district ethics committees, and that disciplinary proceedings are judicial in nature. It answered its three questions in the affirmative and held that the federal courts should abstain. *Id.* at 432–37, 102 S.Ct. at 2521–24.

The Supreme Court squarely addressed the issue of the application of the *Younger* doctrine to state administrative proceedings in 1986 when it decided *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The Commission charged Dayton with sex discrimination in its employment practices. Dayton claimed that its conduct was protected under the First Amendment. While the administrative proceedings were pending, Dayton sued in federal court for an injunction against the state proceedings, contending that any investigation of its hiring and termination processes would violate the

First Amendment. The Supreme Court held that *Younger* principles required abstention. *Younger* applies "to state administrative proceedings in which important state interests are vindicated, so long as in the course of these proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. at 2719. A "full and fair opportunity" is sufficiently afforded if the constitutional claim may be raised in a state court judicial review of the administrative proceeding. *Id.* at 629, 106 S.Ct. at 2723–24.

■ Applying the *Middlesex* test to the circumstances presented in this case, this Court finds that the *Younger* doctrine applies. The VANR's administrative proceeding is judicial in nature, which is sufficient under *Ohio Civil Rights Commission* to meet the first prong of the test. The proceeding implicates important state interests in that the state, through its agency, is seeking to administer and enforce an order which concerns the preservation and protection of air, groundwater, surface water, public health and the environment, under authority set forth in Title 10. The second prong of the test is therefore satisfied. As to the third prong of the *Middlesex* test, the Plaintiffs have raised their constitutional claim in the administrative proceeding, and may pursue it on judicial review. *See* 3 V.S.A. § 815(a).

The Plaintiffs have argued that the Supreme Court's precedent in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), should dictate this Court's decision on abstention. In *Gibson*, duly licensed optometrists sought an injunction under the Civil Rights Act to stop hearings before a state board of optometry on charges of unprofessional conduct. The optometrists were salaried employees of a business which sold eyeglasses. The state board of optometry consisted entirely of independent practitioners of optometry not employed by others. The state board took the position that a recent state statutory amendment outlawed the practice of optometry by individuals who were employed by businesses, and that by accepting such employment the optometrists had violated the ethics of their profession.

The District Court held that the possibility of bias on the part of the administrative tribunal was so compelling that it rendered the administrative process defective and inadequate and deprived the plaintiffs of due process of law. *Id.* at 570–71, 93 S.Ct. at 1693–94. The District Court found that the board was impermissibly biased for two reasons. The first reason was that the board had filed a complaint in state court against the optometrists on substantially similar claims of unprofessional conduct, and might be deemed to have prejudged the issues. The second reason was that the board members had a direct pecuniary interest in the outcome of the proceedings. If the licenses of all optometrists who were employed by business corporations were revoked, optometrists in private practice (who made up the board) would benefit financially from the increased business. The Supreme Court upheld the district court's decision on the ground of personal financial interest. *Id.* at 579, 93 S.Ct. at 1698.

The Plaintiffs have contended that *Gibson* requires this Court to proceed to make a substantive ruling on their allegations of bias on the part of the VANR hearing officer. This Court does not agree. In *Gibson* it was apparent that the members of the administrative tribunal personally stood to benefit financially from a decision adverse to the optometrists employed by businesses. In the case at bar, the hearing officer, employed by the VANR to hear contested case proceedings, has no personal financial stake in the outcome of this hearing. This distinction is fundamental.

■ Ordinarily there is a presumption of honesty and integrity in individuals designated to serve as administrative adjudicators. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975). A showing that an administrative adjudicator was involved in events preceding the administrative adjudication is not enough to overcome this presumption. *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1 (1976). *See also In re Crushed Rock, Inc.*, 150 Vt. 613, 557 A.2d 84 (1988). The combination of investigative and adjudi-

cative functions does not, without more, constitute a due process violation on the ground of impermissible risk of bias. *Withrow*, 421 U.S. at 58, 95 S.Ct. at 1470.

Because the Plaintiffs have not alleged actual bias, nor shown a constitutionally intolerable probability of bias, *id.* at 47, 95 S.Ct. at 1464–65 (pecuniary interest in the outcome or target of personal abuse or criticism), this Court must apply the *Younger* doctrine and abstain.

■ Moreover, *Younger* adds that the "irreparable injury" predicate for obtaining injunctive relief against a state judicial proceeding must be "great and immediate." The Plaintiffs have argued strongly that because they have been unsuccessful at obtaining judicial review of their constitutional challenge to the hearing officer's refusal to recuse himself, they have demonstrated "great and immediate irreparable injury," citing to *Hansel v. Town Court for Town of Springfield*, 56 F.3d 391 (2d Cir.1995) for the proposition that due process demands judicial review prior to a hearing on the merits. *Hansel* involved a criminal, not an administrative proceeding, and the Second Circuit merely noted that the defendant would have the opportunity to litigate his constitutional claim at trial and on appeal. In *Ohio Civil Rights Comm'n* and *Middlesex* the Supreme Court made clear that post-administrative hearing judicial review is constitutionally sufficient. 477 U.S. at 629, 106 S.Ct. at 2723–24; 457 U.S. at 436, 102 S.Ct. at 2523–24.

■ There are of course narrow exceptions to the *Younger* rule. In a case in which the *Younger* doctrine is applicable, federal injunctive relief may nonetheless be given on a showing of bad faith, harassment, or other unusual circumstance that would call for equitable relief. The Plaintiffs have not shown bad faith, harassment or any other unusual circumstance.

The motion for preliminary injunction is denied on the grounds of *Younger v. Harris* abstention, and the complaint is hereby dismissed. *See Gentner v. Shulman*, 55 F.3d 87 (2d Cir.1995).

■ This Court notes that it would reach the same conclusion to decline to take juris-diction over this declaratory judgment action in the exercise of its discretion. Under the standards set forth in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), district courts possess substantial discretion in determining whether to entertain an action under the Declaratory Judgment Act. *Wilton*, — U.S. at —, 115 S.Ct. at 2140. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at —, 115 S.Ct. at 2143.

■ Although *Brillhart* and *Wilton* involved state law claims in contrast to the federal constitutional claim raised in the case at bar, the Supreme Court in *Wilton* acknowledged that the boundaries of discretion may extend to cases that involve issues of federal law. *Id.* at —, 115 S.Ct. at 2144. This Court feels that considerations of wise judicial administration, deference to state judicial proceedings and avoidance of duplicative litigation indicate that this matter is better resolved in the pending state proceedings.

At present there are two pending state proceedings, one in superior court, and one before an administrative agency. In both fora the Plaintiffs have contested the refusal of the administrative hearing officer to recuse himself, and seek or will seek appellate review in the Vermont Supreme Court of this decision. Because there will be an opportunity to litigate this issue fully in state proceedings, this Court declines to entertain this declaratory judgment action in the exercise of its discretion.